# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**DANTE LATRELL GRAF,**
      Petitioner,

v.                                                Case No. 17-C-1169

**LIZZIE TEGELS, Warden,**
Jackson Correctional Institution,
      Respondent.

---

## DECISION AND ORDER

Dante Graf was convicted in the Wisconsin courts of being a felon in possession of a firearm, possession of cocaine, and resisting or obstructing an officer. He was sentenced to approximately six years in state custody: four years of initial confinement and two years of extended supervision. Graf now petitions for a writ of habeas corpus under 28 U.S.C. § 2254.

## I. BACKGROUND

At approximately 2:00 a.m. on March 8, 2014, Milwaukee police officers responded to a report of shots fired in a tavern parking lot. Officer Tremblay testified that when he arrived on the scene he observed a large group of people in the parking lot, some of whom appeared to be arguing or fighting. As Tremblay approached the group, he saw two individuals begin to walk away. He ordered them to stop and show their hands. Tremblay testified that one of the individuals got down on the ground and began doing pushups. The other, whom Tremblay would later identify as Graf, walked to a car that was parked in the lot. While Tremblay was near the other individual on the ground, Graf backed the car up—almost striking Tremblay—and began to drive off. Tremblay ordered

Graf to stop. By this time, a second officer, Officer Helwer, was present and also ordered Graf to stop. Graf stopped and exited the vehicle. Tremblay ordered him to put his hands up, and he complied. But then Graf backed up and started to run away. Before Graf made it very far, the officers caught up to him. Graf struggled even after the officers had caught him. According to the officers, Officer Helwer sprayed Graf in the face with pepper spray to get him to stop resisting. Eventually, the officers were able to handcuff Graf and place him under arrest.

Tremblay and Helwer testified that, after arresting Graf, they turned him over to other officers. One of these officers searched him incident to the arrest and found cocaine. Meanwhile, Tremblay and Helwer searched the car that Graf had just been driving and found a handgun near the driver's seat. As a result of these events, Graf was charged with resisting or obstructing officers, possession of cocaine, and being a felon in possession of a firearm.

At trial, Graf argued that the officers had arrested the wrong person. He claimed that he was not the person who drove the car, ran from police, and was sprayed with pepper spray. Instead, Graf argued, the officers stopped and arrested him while he was walking away from the large group of people in the parking lot.

The jury convicted Graf of all charges. The trial court sentenced him to approximately six years in state custody. At sentencing, the court also imposed mandatory DNA surcharges pursuant to Wis. Stat. § 973.046(1r)(b). This statutory provision was enacted in 2013 and applies to all persons sentenced for misdemeanors on or after January 1, 2014. *See* 2013 Wis. Act 20, §§ 2355, 9326, 9426; *State v. Williams*, 381 Wis. 2d 661, 679 (2018). Graf was sentenced in connection with two

misdemeanor offenses (possession of cocaine and resisting an officer) on November 3, 2014, and thus the court was required to impose the DNA surcharges.

Graf's postconviction counsel initiated the direct-appeal process by filing a postconviction motion in the trial court alleging that the state had failed to disclose exculpatory evidence and that Graf's trial counsel had been ineffective. Both of these claims revolved around two video recordings that would have been made by cameras installed in the squad cars of Officers Tremblay and Helwer. In the postconviction motion, Graf's counsel alleged that the discovery "show[ed]" that these videos existed. (ECF No. 16-2 at p. 18 of 24.) However, Graf's trial counsel did not ask to see these videos, and the assistant district attorney who prosecuted Graf did not automatically provide his counsel with copies of the videos. Graf's postconviction counsel asked the assistant district attorney for copies of the videos, but she was informed that by that time the police had destroyed them pursuant to their retention policy. In his postconviction motion, Graf argued that the assistant district attorney's failure to provide the videos to trial counsel even though he did not request them amounted to a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). He further argued that trial counsel's failure to request the videos amounted to ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984).

Graf's postconviction motion also argued that imposition of the misdemeanor DNA surcharges was improper. Graf observed that although the Wisconsin legislature provided that a surcharge must be imposed on all misdemeanants sentenced on or after January 1, 2014 (as Graf was), it also provided that a person could not be compelled to provide a biological specimen until April 1, 2015. Graf argued that, under the reasoning

3

of *State v. Elward*, 363 Wis.2d 628 (Ct. App. 2015), a surcharge could not be imposed on a defendant before the date on which he could be compelled to provide a specimen.

The trial court denied Graf's postconviction motion without holding a hearing. Graf appealed, raising the same three issues. The Wisconsin Court of Appeals rejected both the *Brady* claim and the ineffective-assistance claim on the ground that Graf's postconviction motion did not allege facts showing that the videos would have helped his defense. The court observed that the motion did not allege what the videos would have depicted and that therefore it did not allege that the videos were exculpatory or that trial counsel's failure to request them caused him prejudice. Applying *State v. Allen*, 274 Wis. 2d 568 (2004), the court held that because the postconviction motion did not allege facts that, if true, would have entitled Graf to relief, the trial court correctly rejected the *Brady* and ineffective-assistance claims without holding an evidentiary hearing. Finally, the court of appeals rejected Graf's challenge to the misdemeanor DNA surcharge, reasoning that Graf had misunderstood the *Elward* case.

After the court of appeals affirmed his conviction, Graf sought review in the Wisconsin Supreme Court, raising the same three claims that he raised below. His petition for review was denied. Graf now seeks federal habeas relief on the same three grounds that he raised in state court.

## II. DISCUSSION

The Wisconsin Court of Appeals addressed all three of Graf's claims on the merits. Therefore, I may grant habeas relief only if the court's adjudication of the claims resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or

4

resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. 28 U.S.C. § 2254(d).

## A.     *Brady* Claim and Ineffective-Assistance Claim

I first address Graf's claim involving the squad videos. Although Graf raises this claim both as a *Brady* violation and an ineffective-assistance claim, I will primarily discuss the claim in the context of ineffective assistance. I do this because Graf alleged that the state disclosed the videos' existence in discovery. (ECF No. 16-2 at p. 18 of 24.) If the state disclosed the videos, but trial counsel did not request or review them, then the prosecutor did not suppress the videos in violation of *Brady*. *See, e.g., United States v. Wilson*, 237 F.3d 827, 832 (7th Cir. 2001) (to prove *Brady* violation, defendant must show that evidence was (1) favorable, (2) suppressed, and (3) material to the defense). However, trial counsel's failure to request or review the videos would likely constitute deficient performance under *Strickland*. Thus, I will examine whether trial counsel's deficient performance resulted in prejudice. *See Strickland*, 466 U.S. at 687–94 (to prove a claim of ineffective assistance of counsel, a criminal defendant must prove both that his counsel performed deficiently and that he was prejudiced as a result). To show prejudice, Graf must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 694.

Before turning to the issue of prejudice, I note that the respondent argues that Graf procedurally defaulted his *Brady* and ineffective-assistance claims because the Wisconsin Court of Appeals supposedly disposed of these claims on an independent and adequate state ground, namely, the rule that a defendant is not entitled to an evidentiary hearing unless his postconviction motion sets forth "sufficient material facts that, if true,

5

would entitle the defendant to relief." *State v. Allen*, 274 Wis. 2d 568, 576 (2004). However, at least as applied to this case, the *State v. Allen* rule is not a rule that is "independent" of the relevant federal questions. *See, e.g., Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010) (federal review is foreclosed only if the state-law ground is "independent of the federal question"). Rather, to apply the rule, the state court had to compare the allegations of Graf's postconviction motion to the relevant federal cases, *i.e.*, *Brady* and *Strickland*, to determine whether those allegations warranted relief under federal law. Thus, Graf did not procedurally default his federal claims, and I will proceed to the merits. I note, however, that in reviewing Graf's federal claims I am limited to the record created in state court. *See* 28 U.S.C. §§ 2254(d)(2) & (e)(2). In this case, that means Graf cannot present facts in this court that he did not allege in his state postconviction motion.

In his postconviction motion, Graf did not allege any facts showing that the squad videos would have helped his defense. He did not, for example, allege that the videos would have shown that he was not the person who drove the car, ran from the officers, and was sprayed with pepper spray. Instead, he alleged that the videos were potentially exculpatory in that they *might* have shown something that contradicted the officers' testimony or otherwise supported his mistaken-identity defense. (ECF No. 16-2 at pp. 18–20 of 24.) The Wisconsin Court of Appeals determined that because Graf did not allege any specific facts showing that the videos would have helped his defense, his postconviction motion did not establish a reasonable probability that, had his trial counsel obtained the videos, the result of his trial would have been different. This determination was not contrary to, and did not involve an unreasonable application of, clearly

established federal law as determined by the Supreme Court of the United States. Nor was it based on an unreasonable determination of the facts in light of the evidence presented in state court. Therefore, Graf is not entitled to habeas relief on his claims involving the videos.[1]

**B.     Claim Involving DNA Surcharges**

Graf contends that the imposition of the misdemeanor DNA surcharges resulted in violations of the Ex Post Facto Clause. His argument is based on *State v. Elward*, 363 Wis. 2d 628 (Ct. App. 2015). In that case, the Wisconsin Court of Appeals held that requiring defendants who (a) committed misdemeanors before the effective date of the statutory provision creating the surcharge (January 1, 2014), and (b) were sentenced before the date on which the court could require the defendant to provide a biological specimen (April 1, 2015), would violate the Ex Post Facto Clause. *Id.* at 632. The court reasoned that requiring a non-contributor to the databank to pay the surcharge would amount to a fine rather than a regulatory fee and therefore would be a form of punishment. *Id.* Thus, if the non-contributor committed his crime before the effective date of the statutory provision, imposing the surcharge would result in imposing a punishment that was not on the books at the time the defendant committed the crime, in violation of the Ex Post Facto Clause.

The Wisconsin Supreme Court recently overruled *Elward* and held that the surcharge is not a form of punishment and that therefore imposing it on defendants who

---

[1] As noted, the squad videos have been destroyed. Graf does not argue that the destruction of the videos violated his federal rights. Nor did he raise such an argument in state court. *See* Wis. Ct. App. Op. at 5 n.2, ECF No. 16-5.

committed their crimes before the statute's effective date does not violate the Ex Post Facto Clause. *Williams*, 381 Wis. 2d at 676–89. However, even if *Elward* were still good law, Graf would not be entitled to relief. Graf committed his crimes on March 8, 2014, which was *after* the date on which the statutory provision creating the surcharge went into effect. Thus, even if the surcharge was a form of punishment, the court could have imposed it on Graf without violating the Ex Post Facto Clause. *See, e.g., Peugh v. United States*, 569 U.S. 530, 532–33 (2013).

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Graf's petition for a writ of habeas corpus is **DENIED**. The Clerk of Court shall enter final judgment. Pursuant to Rule 11 of the Rules Governing § 2254 Cases, I find that the petitioner has not made the showing required by 28 U.S.C. § 2253(c)(2), and therefore I will not issue a certificate of appealability.

Dated at Milwaukee, Wisconsin, this 2nd day of October, 2018.

    s/Lynn Adelman\
    LYNN ADELMAN\
    United States District Judge